May it please the Court, I'm William Payne, and I represent the plaintiff's appellants, Mr. Skinner and Mr. Stratton. I'd like to reserve four minutes for rebuttal. Just watch the clock, Mr. Payne. What this case really boils down to is whether saying certain dollar amounts will be credited when calculating pensions really means the same thing as saying that these amounts will be subtracted. We don't think they mean the same thing, Your Honor. In fact, we think it means the opposite. This case also... It's credited. I thought the operative language was calculated. Credited, Your Honor. As Mr. Stratton, in his appeal process, told the company, he said that the language in question of the SPDs was that during the transition period, and I'm quoting, your benefit will be calculated as if you had contributed 4% annually and those contributions will be credited with a 5% annual rate of return. And Stratton went on to say, nowhere did the SPD state that these contributions would actually be subtracted. And what Stratton was referring to, of course, was that the company was saying that the document that's purportedly the actual plan document that's tucked away in the file drawer that nobody sees says something quite different. And specifically, in an obscure appendix among hundreds of pages of complicated provisions, it says that these contributions would be subtracted, not credited. Now, are we talking about a particular SPD, or do the 2003 and the 2005 SPDs... Same thing, Your Honor. They're the same on this point? Yes, Your Honor. 2003, 2005 were exactly the same. And what we're dealing with is a period from January 03, and it was originally supposed to last until 2008, that this type of calculation, a new transition calculation that grew out of the sale, would take place. As it turns out, the company did send what we call an SMM, a summary of material modification, in January of 2006 or December of 2005 that actually cut off what we say should be the case from the SPD. That was a successful cutting off of this crediting. As I understand it, the district court concluded that there was disclosure based on the prior plan documents, the 98 plan and the 88 plan. Help us sort that out. Yes, Your Honor. What the judge concluded was that these summary plan descriptions, which really blatantly said it was going to be credited, also had language that incorporated by reference a 1998 SPD and an earlier one from the 90s, but there is nothing in those documents, and we've made this point really quite clear, especially in our reply brief, that says those old SPDs are incorporated by reference. It didn't say that at all. All it said was that, well, I mean, I can read the language that he relied on. He said your Part B benefit is based on a formula similar to the one under your historical plan and subject to modifications in the way your service and compensation are determined. Other modifications may also apply. It doesn't say incorporated by reference. It just says, hey, this is sort of similar to what happened in the old days, but really this was an entirely new transition benefit that grew out of the sale. These people were obviously very apprehensive as to what would happen to their pension benefits. These new SPDs came out as the only thing they got, and they looked at the word credited and thought that's what it would be. But then when they went to apply for their benefits in 2005, then at that time the company said, oh, no, we really meant subtracted. Or offset. Don't they use the word offset as well? Well, subtracted, I don't remember the word offset so much in the claims procedure when they made the determination for Stratton. They didn't even make it for Mr. Skinner. They lost his appeal. But for Stratton, they told him that, no, it meant to be subtracted. Most of their rationale actually didn't come out until we got into the lawsuit, and partly for that reason. Because they totally ignored his arguing, Mr. Stratton's arguing about the SPD. He said, what about the SPD? Totally ignored it. The SPD wasn't in the bundle of documents that's considered to be the administrative record. And for that reason, we think that de novo review applies. Because the court or the administrator never relied on this SPD argument or never addressed the SPD argument in the claims process. And in order for you to apply the deferential arbitrary and capricious standard, there actually has to be a determination in that appeal process to defer to. There was no determination on that issue against Skinner. Did the 1998 SPD say that only the employees taking a lump sum distribution would be affected by the offset? It was really set up for an entirely different purpose than the new offset. And, Your Honor, if they took the lump sum and they took the money, then it was offset. But if they rolled it over, it wasn't offset. And what that particular SPD, I'm looking at the 1998 SPD, which is the excerpt from Record 123 and 124, it doesn't really make clear that this offset was really a consistent part of the plan back then. It gave two examples, this Paul and Maria, which we talk about in our reply brief, and no deduction or offset was taken. So even if you were to consider this to be an incorporation by reference by saying, referring to some historical formula, and that's supposed to be a big alarm bell for people to go back and read these old SPDs, you would go read them and it wouldn't really apply to your situation because sometimes there was this offset and sometimes there wasn't an offset. So we don't think the courts incorporation by reference really argument holds up. And also I think that you have to look at the plan provision itself that the court was relying upon. The one that I said is tucked away in the file drawer and it's an appendix. It's actually, this thing, I've been doing employee benefits law for 30 years and I have a hard time understanding it myself. It has a couple hundred pages. It has 20 articles. Each is divided into sections. It has all these appendices. And one of these appendices happens to be this H3.03 appendix. And if you read that really carefully, you'll see it does say minus this, minus instead of credited. And so that's what these people were apparently supposed to go find because, again, it wasn't the document they got. The documents they got said that it would be credited. The company makes much of, well, what I think the main thing they do is they ignore the Ninth Circuit law that says that SPDs amount to plan documents which are controlling the Burke case, the Van Willis case. There's a new case, Carter v. Hewlett-Packard, that we said in our reply brief from December. They all say the same thing, that it's a plan document that governs. And when there's an inconsistency with the actual plan document, the participant is entitled to rely on the one that's more favorable, whether it's the SPD or whether it's the actual plan document that's put away in the file drawer. Counsel, help me figure out where Judge Walter, according to your view, went wrong. I'm looking at page 10 of his order. I guess it's ER 31 where he reaches the conclusion that plaintiffs are incorrect in their assertion that the master plan documents and the 2003 and 2005 SPDs are in conflict. Help me sort that out. Why is that not correct? Because it goes back to his assumption that the SPDs, the 2003 and the 2005, incorporated by reference some old formulas. So what he's saying is the actual plan, which does have the word minus in it, that H3.03, he says that if these new SPDs incorporated by reference an old plan that did have a subtraction, then they're not inconsistent with the actual document. And again, I don't think that they really incorporated by reference. I think there was this very fleeting reference to some past historical formula, and that that is not enough to have an incorporation by reference. Well, he does say the 1988 SPD. Yeah. Those were the old historical. It's clear that your benefit will be the greatest of such and such, less the amount. That's the one he said is incorporated by reference when it was owned by Litton. Right. But that was out the window. But he's saying the reason that that's somehow picked up is because of this reference that's in these new SPDs that says historical formula. Counsel, you're down to three and a half minutes. Okay. Well, I'm going to reserve that for rebuttal, Your Honor. Let me just say, though, that there — well, I'll save it for rebuttal. Thank you. Very well. Thank you. We'll hear from the Northrop. Good morning, Your Honor. My name is Nancy Ross on behalf of the defendants in this case. Your Honors, the theme of this case is that no good deed goes unpunished. What is obvious here? It is obvious that plaintiffs suffered no reduction in their benefits. All of the communications that were put before Judge Walter and that are before this court contain the same explanation. You will receive the greater of your benefits under your historical plan, the Linton Plan B, or the new cash balance plan. And the reason that I say no good deed goes unpunished was this was as a result of Northrop's intention to make sure that for the first five years of this new formula, this new cash balance formula, that no plan participant would be injured and receive less than they had been receiving. Now, plaintiffs try to argue that there was a conflict between the 2003 and the 2005 SVDs and the master plan document. That is their fundamental claim. And they rely on the Burke case to say that when you have a conflict, the more favorable document controls. We don't disagree with that. In fact, that is well-established law. The problem is there is no conflict here. The 2003 and the 2005 SVDs stated, and if the court will permit me, let me just read. Which page are you on from the excerpts? I'm looking at the ER 317, 318, and I will follow through to 320, Your Honor. The 2003 SVD says it notified them first of what the new formula would be for starting in July 2003 and going all the way through until retirement. And that said, the formula of A, A being what they had already accrued up until July 2003. That is undisputed. That was untouched. Then they get the greater of B or C. B is the historical plan. C is the new cash balance plan. And then in July of 2008, everybody goes under the new cash balance plan. All right? Then the SPD goes on to explain that for the first five years, they will receive a transition benefit that is the higher of the Part B or the Part C calculation. The SPD describes the transition benefit saying, you earn benefits under the historical plan in effect for you or under the new plan. What page are you reading from? 320. Thank you. Whereabouts on 320? The Part B or C, that one? Exactly. The caption? Exactly. You earn benefits under the historical plan. Is that the proposition? Exactly. That's what I read, Your Honor. And then it goes on to explain also on that page, when you leave Northrop Grumman and begin payment of your pension benefits, your benefit will be calculated under both plans for your service during the transition period. Then it goes on to incorporate by reference the earlier SPDs. And it says, Part B, colon, your transition benefit under the historical plan. And it goes on to say, the chart below describes how your Part B benefit will be determined at your retirement. There's the critical language. The specific rules and provisions of each plan, including vesting retirement and payment options, are provided in the summary plan description for that plan. And it tells the participant how they can obtain that SPD for the Linton Plan B, either online, giving the e-mail address, or by telephone. Now, which SPD is that referring to? Is it 88, 98, 03, or 05? Exactly. Which? Oh, I'm sorry, Your Honor. That is referring to the Linton Plan B SPDs, which were the 1988 and 1998 SPDs. And we are reading from the 2003 SPD, the new SPD. Now, Your Honors, I don't know how you can interpret that in any other way than to realize that, hey, we're going to protect you. We're going to give you the greater of the two. Now, the SPD that came out in 2003, the purpose of it, as Judge Walter recognized, was really to explain the new cash balance plan. Because the transition benefit was also something new, the SPD appropriately included an explanation of that. What the SPD did not do, rightfully so, is it did not go back, and for the ten or more plans that were being assimilated into this one new benefit formula, the cash balance formula, it did not restate all of the nuts and bolts for every single one of those plans. You can only imagine what the SPD would look like if it did that. And as this Court has said time and time again, in Stahl and, in fact, even in the Burke case, the Court there recognized that the master plan document is the governing plan document, and the SPD, quote, unquote, is simply a summary. Now, Your Honors, all of the material ñ well, let me go back. Let's assume that Mr. Payne's argument that in 30 years he's never seen an SPD as convoluted or a plan document as convoluted as that. Let's turn that into a legal analysis. What plaintiffs are then saying, and what they stated in their briefs, is that the SPDs, the 2003 and 2005 SPDs, are ambiguous. In Viscano v. Microsoft, Your Honors, the Ninth Circuit explained how you analyze an ambiguity in a summary plan description. What you do is you first look to extrinsic evidence. No surprise, that's how the law typically looks at ambiguities. If you look at the extrinsic evidence here, there simply can be no doubt that you were going to get the greater of your historical plan benefit, the one you were receiving up until 2003, or the newer one, whichever was greater. I can walk the Court through the myriad communications that came out that explained this. Let me say, without exhausting the Court, that it started in 2003. Beginning of 2003, Northrop sent out a glossy brochure. Right there, it tells the reader a transition benefit, and this is at ER 286, Your Honors, a transition benefit calculated under their current pension plan or the new cash balance plan, whichever is greater, will be received for benefit service from July 1, 2003 to June 30, 2008. Counsel, can I just ask, is there anything in the 2003 SPD which uses the term offset or deducted or subtracted? That seems to be the essence of the argument from your opposing counsel. Yeah. And, Your Honor, it does not specifically use that word. What it does is it refers them to look to their historical SPDs for the exact formula. The offset was part of the formula. Okay. Historical means the 88 and 98. Correct. And isn't it significant that the 88 and 98 plans do treat certain classes of retirees differently? Am I reading that correctly or not? No, Your Honor. I think there was some confusion by the plaintiffs in the record that they seemed to indicate that the offset was only something that applied with the lump sum. Yes. The offset is actually part of the formula, period. So it would apply to everybody? It would apply to everybody. Both cases, the 88 and 98? Yes, absolutely. And it told them about that. It told them. And this is one of the points that I wanted to clarify in argument listening to plaintiff's counsel, is that there seems to be an effort to leave the court with the impression that the 88 SPD and the 98 SPD did not clearly present the offset. And that's simply wrong, Your Honors. At the record at 92, the 1988 SPD from Lynchon clearly explains that the formula includes, quote, less the annuity offset of your Part 1 deposits. The 1998 SPD reads, your pension benefit will be reduced by the annuity equivalent of your SSSP, that was the 401K, withdrawal. Plaintiffs do not dispute that the offset is in the plan document for 2003 going forward. That's where Mr. Payne referred to the appendix that we cited to in the record. So there's no dispute that the formula in the master plan document contains an offset. And, in fact, there really should be no dispute that the historical plan required an offset. As I said, I just pointed the court to the two historical SPDs, and it was also in the historical plan. So going back to the analysis of the ambiguity, all of the extrinsic evidence, you have the 2003 glossy brochure. You have what ERISA refers to as a 204H notice that comes out in 2003 that explains that the transition benefit will be the greater of the two. You have another letter that goes out before the implementation of the new formula in June of 2003 from the benefits director, and this one I particularly like, Your Honors. This is at ER 295. This is the letter that went out from the benefits director, and it states, and I think this is very clear, starting July 1, you will accrue a transition benefit. Excuse me. Where are you? Which paragraph are you in? It starts out starting July 1. We're on 295? Yes. Well, I see beginning July 1. Does it go on to say you will accrue? I haven't found it. I must say it's not there, but it's a very small print, and there's a lot of material on it. Well, which paragraph? Second paragraph. I'm sorry, Your Honor. I just have a reduced. Oh, starting July 1, you will accrue. I found it. It's the second sentence of the second paragraph. Thank you, Your Honor. I apologize for my inability to direct the court better. It says you will accrue a transition benefit under the new pension plan formula or based on a formula that approximates the Witten Plan B formula. For example, the formula that approximates the Witten Plan B formula assumes that you would have contributed at least 4% to the FSSP, that was the 401K, during the five-year transition period, and that you would have earned a 5% return on your FSSP assets. When you retire, your benefits will be calculated based on the greater of these two formulas. You then have the 2003 SPD, which we talked about. Well, there's nothing in there that talks about offset or subtraction. It does not, other than it refers to based on the formula. Back to the point. Exactly, Your Honor. You have the 2003 SPD. You have the series of town hall meetings. The 2005 town hall meeting has, let me get the reference for the court, has an explicit reference. It has a chart, and this is at the supplemental record at 577. It talks about the fact that the plan participants will be grandfathered for the five years with two changes. So it incorporates the formula, and then it says, we deem that employees contributed 4% of pay to the plan, and offset plan accruals for the annuity equivalent. So there's your offset, explicit language. We limited credits to 5% for pre- and post-contributions. Now, plaintiffs have also made a big deal out of the fact that the word credit is used. They not only take it out of context. I want to remind the court that the word credited is only used with respect to the interest that will be credited, but as the court recognized, the language that is used is calculated as if, or deemed to have contributed, or you will be assumed to have contributed. After you have the town hall meetings with the PowerPoint presentations, you then have the July 2005 SPD. It's very similar to the June 2003 SPD, same language incorporating, by reference, the 1998-1988 Linton SPDs. Counsel, your time has already expired. You can finish your thought. All right. And finally, most importantly, you then have what Mr. Payne referred to as the summary of material modification required by ERISA, and all of the parties agree, there is no dispute, that that clearly uses the word offset or some equivalent. It uses the word less in the formula, and that's at ER-377. Thank you, Counsel. Thank you very much, Your Honor. Mr. Payne, you have some reserve time. Yes, Your Honor. Finally, in January 2006, they sent out the SMM that stated clearly that this was going to be subtracted, not credited. We went over all this extrinsic evidence in our reply brief, and as the court pointed out, for example, that particular letter doesn't say deducted. It just says this is a new system. It's no cost to you. I think if you read that, you'll see that there's nothing in there that really unequivocally tells them that it's to be deducted. It refers back, again, to these historical formulas. But I think that is probably all irrelevant because we're not saying the SPD is ambiguous. We think it's unambiguous, and the company itself knew that they were creating confusion, and that their SPDs had created terrible confusion. One of them wrote, and this is at the we cite this in the reply brief, and it's at the docket 117. Oh, it's at ER excerpt from record 612. And what this person says once they realize that these SPDs had made people think that they were having these things credited, not subtracted, she said the reduction of the benefit by the amount attributed to the employee contribution has not been explained in meetings or in the written material. These employees contend that this is a significant omission and misleading and should have been spelled out so the employees could make informed decisions. Based on the information presented to the employees, they had no reason to think that the benefit would be other than 60 percent of the contributions real or attributed. And then in another message they said, we need an attorney quick. I thought we had made it clear that participants would only receive the employer portion. We need to pull all of the communications. They knew that the SPD said something. We contend that they knew the SPD said something the opposite of what. With respect to the referring back to the 88 and 98 plans, do you agree with counsel that they're essentially identical? No, Your Honor, because again, and I did raise this in my opening talk here, if you look back, and this is at excerpts from records 123 to 124, if people were to go back and they would look at that portion of the 1998 SPD, they would see that this annuity equivalent wasn't always offset. In the two examples listed there, Paul and Maria are the examples they gave. There was no deduction or offset taken when they didn't take their account balances as lump sum distributions on retirement. And so there are, even if they would be, it would trigger in their mind historical documents. I ought to go back and look at those because maybe there's something in that old SPD that was a whole different system that has some kind of offset. They would go back and they would read that and they would say, oh, well, I can't tell if the offset applies because that only applied when you took it in a lump sum distribution and there are specific examples where there was no offset. So even assuming that you have to go through all of those hoops, I don't think that it's adequate disclosure for an SPD, which we cited all the regulations that say you have to say in plain terms and you have to have it actually in the document itself. You can't incorporate another document. We had some briefing on that in our reply brief, too. There's specific regulation about that, Your Honor. Counsel, your time has expired. The case just argued will be submitted for decision and the Court will adjourn. Thank you, Your Honor.
judges: Goodwin, O'scannlain, Graber